RENDERED: JULY 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1282-MR

GEICO CASUALTY COMPANY                                        APPELLANT


                          APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        HONORABLE TRACY E. DAVIS, JUDGE
                          ACTION NO. 18-CI-003622


JILIANNE WARNER; CHRISTIAN
WORLEY; KENTUCKY
EMPLOYERS MUTUAL
INSURANCE; AND MIDNIGHT
RECOVERY, INC.                                               APPELLEES

AND


                          NO. 2024-CA-1329-MR

JILIANNE WARNER                                        CROSS-APPELLANT


                   CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        HONORABLE TRACY E. DAVIS, JUDGE
                          ACTION NO. 18-CI-003622


GEICO CASUALTY COMPANY;
ANGELA DOWNES; CHRISTIAN
WORLEY; COURTNEY WILDER;

EDWARD MEIMAN; KENTUCKY
EMPLOYERS MUTUAL
INSURANCE; MIDNIGHT
RECOVERY, INC.; AND RUTH
WILLIAMS                                                    CROSS-APPELLEES

AND

NO. 2024-CA-1362-MR

CHRISTIAN WORLEY                                      CROSS-APPELLANT

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE TRACY E. DAVIS, JUDGE
ACTION NO. 18-CI-003622

JILIANNE WARNER; ANGELA
DOWNES; COURTNEY WILDER;
EDWARD JODY MEIMAN; GEICO
CASUALTY COMPANY;
KENTUCKY EMPLOYERS MUTUAL
INSURANCE; MIDNIGHT
RECOVERY, INC.; AND RUTH
WILLIAMS                                                    CROSS-APPELLEES

AND

NO. 2024-CA-1376-MR

MIDNIGHT RECOVERY, INC.                          CROSS-APPELLANT

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE TRACY E. DAVIS, JUDGE
ACTION NO. 18-CI-003622

JILIANNE WARNER; ANGELA
DOWNES; COURTNEY WILDER;
EDWARD JODY MEIMAN; GEICO
CASUALTY COMPANY;
KENTUCKY EMPLOYERS MUTUAL
INSURANCE; AND RUTH
WILLIAMS                                                    CROSS-APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  COMBS, MOYNAHAN, AND TAYLOR, JUDGES.

COMBS, JUDGE:  These appeals follow entry of a judgment by the Jefferson

Circuit Court awarding Jilianne Warner (Warner) nearly $164 million in damages

as a result of personal injuries she sustained in a car crash.  After our review, we

affirm in part, reverse in part, vacate in part, and remand for further proceedings.

**FACTUAL & PROCEDURAL BACKGROUND**

On December 29, 2017, Warner's car was rear-ended by a tow truck

operated at high speed by Christian Worley.  Warner was acting within the course

and scope of her employment at the time.  Worley was employed by Midnight

Recovery, Inc., (Midnight Recovery).

Immediately before the collision, Warner's vehicle was stopped at a traffic light at a multi-lane intersection of Greenbelt Highway and Greenwood Road in Louisville. According to Worley, he was traveling between 65 and 70 miles per hour toward the intersection when his attention was diverted and he looked away from the road. Worley explained to an investigating officer on the scene that he did not remember seeing the red traffic light. But when he looked back at the road, he realized that he was about to collide with Warner's vehicle. Worley explained that he slammed on the brakes in an effort to avoid crashing into her; however, the brakes "locked up." He could not avoid the crash.

Warner testified that she observed the tow truck barreling toward her at considerable speed and that she considered how to maneuver her vehicle to safety. However, given Worley's excessive speed, Warner guessed that she had less than two seconds to react. The tow truck plowed into the rear of Warner's car and crushed it. Worley was not towing a vehicle at the time, and he had no recollection of where he was headed when he failed to observe the traffic light and collided with Warner's vehicle.

Worley called MetroSafe 911 to report the crash. He spoke with 911 Operator Ruth Williams (Williams), who took some basic information about the time and location of the crash. Williams did not ask whether anyone had sustained injuries. She classified the collision as a non-injury accident and did not dispatch

an ambulance. About a minute after Worley's call, an unidentified bystander placed a second 911 call to report the crash. Operator Courtney Wilder (Wilder) took this second call, but she also did not classify the report as a crash with injuries. She did not dispatch an ambulance. Eight minutes after the crash, a third person called 911. This caller asked why an ambulance had not yet arrived. The caller told the operator that Warner could not feel her legs and that she was suffering with neck and arm pain. MetroSafe 911 then immediately dispatched an ambulance and other emergency assistance to the scene.

At the time of the accident, Warner was 27 years of age. She suffered permanent, life-altering injuries as a result of the collision. She was rendered quadriplegic.

On June 22, 2018, she filed a negligence action in Jefferson Circuit Court against Worley and Midnight Recovery. She also sued -- in their individual capacities -- MetroSafe 911 Operators Williams and Wilder; Assistant Director of MetroSafe 911, Angela Downes (Downes); and Edward Meiman, (Meiman), Executive Director of Emergency Services. (Williams, Wilder, Downes, and Meiman are referred to collectively as "the 911 Defendants"). Warner sought both compensatory and punitive damages.

Early in the proceedings, Worley **admitted** that his negligence caused the collision and Warner's injuries. Midnight Recovery **stipulated** that Worley

was acting within the course and scope of his employment at the time of the crash and that it was, therefore, vicariously liable for Warner's injuries. However, Midnight Recovery denied that it was liable for the independent negligence claims asserted against it by Warner, including negligent training, supervision, and maintenance of the tow truck. It also disputed her damages.

During discovery, Warner learned that Midnight Recovery had a nonexclusive independent servicer agreement with GEICO Casualty Company (GEICO) to provide roadside assistance to GEICO insureds. On March 27, 2019, she filed an amended complaint adding GEICO as a defendant.

> Warner alleged that GEICO was also both directly and vicariously liable. She contended that Worley was responding to a GEICO call for roadside assistance at the time of the collision, arguably rendering GEICO vicariously liable for his actions and those of Midnight Recovery.

She also asserted independent claims against GEICO based upon its allegedly negligent hiring and supervision of an independent contractor. GEICO denied these allegations both as a matter of fact and as a matter of law.

The 911 Defendants did not answer the complaint, nor did they respond to Warner's discovery requests. Instead, they filed a motion to dismiss pursuant to the Kentucky Rules of Civil Procedure (CR) 12.02. By its order entered on April 25, 2019, the circuit court dismissed the claims against them for failure to state a claim upon which relief could be granted. The court concluded

-6-

that while the 911 Defendants (employees of Louisville/Jefferson County Metro Government) are charged with a "general duty" to protect the public at large, they had no "special relationship"[1] with Warner, individually. Consequently, and as a matter of law, applying the "public duty doctrine," the court reasoned that they could not be held responsible for exacerbating Warner's injuries.

All of the defendants, with the exception of the 911 Defendants, lived outside of Kentucky. Worley lived in Georgetown, Indiana, at the time of the accident. Midnight Recovery was an Indiana corporation that was located in Sellersburg, Indiana, at the time of the accident. And GEICO is a Maryland corporation headquartered in the Chevy Chase/Bethesda area of Maryland.

Upon the dismissal of the 911 Defendants, the only defendants from Kentucky, diversity became a reality and, therefore, an opportunity arose for removal of the case to federal court.[2] Accordingly, GEICO sought to have the case removed to federal court.

Warner resisted the removal, filing a motion to remand to Jefferson Circuit Court. In her motion, she argued that she had filed suit against the 911

---

[1] The interplay of these concepts will be discussed in more detail later in the Opinion.

[2] "A civil action brought in state court may be removed to federal court if the federal district court has original jurisdiction over the action. 28 [United States Code] U.S.C. § 1441(a). A federal court has original jurisdiction over any civil action 'where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.' 28 U.S.C. § 1332(a)." *Hughes v. UPS Supply Chain Sols., Inc.*, No. 3:07-CV-605-S, 2008 WL 3456217, at *1 (W.D. Ky Aug. 8, 2008).

Defendants in good faith, asserting her reliance on the "special relationship test" exception to the public duty doctrine upon which the circuit court had relied in granting dismissal. She emphasized, therefore, that she had not included them in her lawsuit as a ruse to circumvent the possibility of diversity and thus to defeat federal jurisdiction. Without the 911 Defendants, diversity existed among the parties allowing for removal to federal court. Ultimately, the federal district court determined that there was an arguably reasonable basis to conclude that upon appeal of the dismissal of the 911 Defendants, this Court would reverse the trial court's decision to dismiss them. It predicted that we might conclude that liability **could be imposed** -- denying qualified official immunity and holding that a "special relationship" did exist between Warner and the 911 operators. *Warner v. Midnight Recovery, Inc.*, No. 3:19-CV-00453-RGJ, 2020 WL 1105111, at *1 (W.D. Ky. Mar. 6, 2020). On that basis, the action was remanded to state court.

Eventually, GEICO filed a motion for summary judgment. It argued that it could **not** be held vicariously liable for the negligence of an independent contractor. The trial court **denied the motion**, observing that the question of whether Midnight Recovery was GEICO's agent or an independent contractor presented genuine issues of material fact. Furthermore, regardless of whether the relationship was one of agency or independent contractor, GEICO could be held vicariously liable for Worley's negligence "based upon the inherently dangerous

nature of operating heavy motor trucks on the highways." The court was persuaded that "the inherently dangerous nature" exception governed and applied as set forth in KRS[3] 189.670:

> It is hereby declared to be the public policy of this state that heavy motor trucks, alone or in combination with other vehicles, increase the cost of highway construction and maintenance, interfere with and limit the use of highways for normal traffic thereon, and endanger the safety and lives of the traveling public, *and that the regulations embodied in this chapter* with respect to motor trucks, semitrailer trucks and semitrailers are necessary to achieve economy in highway costs, and to permit the highways to be used freely and safely by the traveling public.

However, by its order entered June 1, 2023, the trial court **granted summary judgment** to GEICO with respect to the independent negligence claims asserted against it on the theory that it was negligent in hiring and supervising Midnight Recovery. It did not designate that order as "final and appealable," and so it remained interlocutory until GEICO filed a motion asking the court to insert finality language pursuant to CR 54.02. The court acknowledged the fluid and contradictory state of Kentucky law on this issue and granted GEICO's request. Warner did not file an appeal on this issue at this time. The issue will be discussed in more detail later in this Opinion. By its order of July 12, 2023, and in accordance with the requirements of our civil rules, the circuit court designated its

---

[3] Kentucky Revised Statutes.

order granting summary judgment final and appealable with no just cause for delay. CR 54.02. Although Warner considered filing an appeal of the court's order, she did not.

In light of the parties' stipulations, Worley filed a motion asking that he be dismissed from the action. He argued that his dismissal would not impact Warner's remaining claims against Midnight Recovery and GEICO. Observing that Warner had asserted common law negligence claims against Worley, individually, as the primary tortfeasor, the trial court denied the motion.

## THE TRIAL

Ultimately, the circuit court determined that **a jury trial** addressing the remaining claims would be conducted in two phases. In the first phase, the jury would: 1) decide whether Worley and Midnight Recovery were "on a GEICO run" at the time of the crash (rendering GEICO vicariously liable as a matter of law, according to the trial court); 2) determine whether Midnight Recovery breached a duty with respect to the direct negligence claims; *(i.e.*, negligent hiring, training, and supervision); 3) calculate damages; and, finally, 4) apportion fault.

Phase two of the trial would examine the agency issue: the jury would determine whether Midnight Recovery was acting as GEICO's agent at the time of the crash, thus incurring liability for damages. Any punitive damages instruction

against GEICO would be based upon the existence of an agency relationship pursuant to KRS 411.184(3), which provides as follows:

> In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question.

Following a barrage of motions *in limine*, the first phase of trial began on March 11, 2024. During *voir dire*, the trial court denied GEICO's motion for a mistrial following counsel's introduction of Midnight Recovery as a tow truck service -- "*now dissolved.*" GEICO argued that this irrelevant information signaled to the jury that Midnight Recovery would be unable to pay any part of a judgment against it -- thus prejudicing GEICO's position. (During deliberations, the jury posed this very question to the court, which declined to provide an answer.)

Following presentation of Warner's evidence, Midnight Recovery filed a motion for directed verdict with respect to the independent negligence claims asserted against it. It argued that Warner was unable to produce evidence indicating that Midnight Recovery's allegedly negligent business practices were a proximate cause of the collision. The trial court agreed and granted that motion.

GEICO filed motions for a directed verdict with respect to Warner's claim that it was vicariously liable because Worley and Midnight Recovery were "on a GEICO run" at the time of the crash. It argued that there was no probative

-11-

evidence to support Warner's claim that Worley was en route to assist a GEICO insured when he collided with Warner's vehicle. The trial court denied the motion.

Finally, the trial court granted a directed verdict to Worley and Midnight Recovery with respect to Warner's claims for punitive damages, concluding that this was a matter of simple negligence rather than gross negligence.

On March 18, 2024, the jury found that Worley and Midnight Recovery were on a GEICO roadside-assistance-run at the time of the crash. It awarded Warner $163,973,761.14 in damages (plus interest), representing: individual sums for past and future medical expenses; past and future pain and suffering; and permanent impairment to her ability to labor and earn money. This was the full sum authorized by the trial court's instructions to the jury.

Phase two of the trial began. The jury was asked to determine whether Midnight Recovery was acting as an independent contractor at the time of the collision or as an agent of GEICO. However, this portion ended in a mistrial based upon juror misconduct.

Following this mistrial, a new jury was empaneled on May 20, 2024, to deliberate the phase two agency issue. On May 23, 2024, the jury found that Midnight Recovery was acting as an independent contractor and not as GEICO's

-12-

agent at the time of the crash. Accordingly, no punitive damages were assessed against GEICO.

However, it must be recalled that prior to trial, the court had **denied** GEICO's motion for summary judgment on the issue of its vicarious liability. It had concluded that driving a tow truck was "inherently dangerous" pursuant to KRS 189.670 and that, therefore, this jury finding that Midnight Recovery was an independent contractor was largely irrelevant since the ultrahazardous exception applied -- rendering GEICO nonetheless liable for the negligence of Midnight Recovery and Worley. In its judgment entered on June 25, 2024, the court held that Warner "shall recover jointly and severally" from Midnight Recovery, Worley, and GEICO.

## POST-TRIAL DECISIONS

Post-trial, Warner argued that the trial court had improvidently granted summary judgment to GEICO with respect to her direct negligence claim. She filed a motion to vacate the finality language recited in the order of July 12, 2023, so that she could now appeal the trial court's determination; she had declined to appeal that issue at the time of the entry of the summary judgment. To recapitulate, the court ambivalently had concluded that Kentucky law does not recognize a claim for negligent hiring and/or supervision of an independent contractor. But it had candidly acknowledged its uncertainty about the fluid and

-13-

contradictory state of Kentucky law on the issue, inviting the parties to file an appeal at that juncture.

The trial court concluded that its earlier order granting summary judgment was "by its very nature interlocutory" and that including the finality endorsement was "manifestly in error, and perhaps an abuse of discretion." Consequently, it amended its order to omit the finality language.

In another post-trial motion, it rejected Warner's argument that it had erred in dismissing the 911 Defendants.

The trial court rejected GEICO's motion for judgment notwithstanding the verdict (JNOV). It reiterated its conclusion that GEICO **could** be held liable for the negligence of Worley and Midnight Recovery based upon the inherently dangerous nature of driving a tow truck. It also concluded that Warner presented sufficient evidence at trial for the jury to conclude that Worley and Midnight Recovery were, in fact, "on a GEICO run" at the time of the collision.

Finally, the trial court rejected the argument that the jury's pain and suffering awards were excessive. This appeal and several cross-appeals followed.

## ON APPEAL

On appeal, GEICO argues that the trial court erred by failing to grant summary judgment with respect to Warner's claim that it could be held vicariously liable for Worley's negligence.

-14-

Where the material facts were not genuinely disputed and summary judgment was denied by the trial court purely as a matter of law, an order denying summary judgment is properly reviewable on an appeal from an adverse final judgment -- the same as any other interlocutory ruling by the trial court on a question of law. *See Auslander Properties, LLC v. Nalley*, 558 S.W.3d 457, 463 (Ky. 2018).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Reviewing the issue *de novo*, we must determine whether the movant was entitled to judgment as a matter of law. *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky. App. 2000)). Findings of fact are not considered. *Id.*

## GEICO: VICARIOUS LIABILITY FOR WORLEY; DENIAL OF SUMMARY JUDGMENT FOR GEICO

Warner sought to hold GEICO responsible for the negligence of Worley, the employee of an independent contractor, Midnight Recovery. Warner's theory of the case is as follows: GEICO contracted with Midnight Recovery to provide roadside assistance to some of its insureds, including towing disabled vehicles. Because driving a tow truck is intrinsically dangerous, where it can be

shown that Worley was responding to a GEICO insured, GEICO is also liable for the negligence Worley committed while driving the tow truck.

Although Worley and Midnight Recovery stipulated that Worley's direct negligence caused the collision, the trial court permitted the jury to consider -- during the first phase of trial and over strenuous objection -- evidence relating to GEICO's right to review Midnight Recovery's compliance with safety standards; Worley's insurability; Worley's sketchy driving record; the condition of the tow truck; and GEICO's relationship with Midnight Recovery following the accident. The court allowed Worley's counsel to argue in closing that Worley was "set up to fail" and to highlight to the jury that "the judge . . . has instructed that this [was] an inherently dangerous truck." The court had instructed the jury that "due to the inherently dangerous nature of the type of truck involved in this case . . . Geico is liable for the actions of [Worley and Midnight Recovery] if . . . you determine that [Worley and Midnight Recovery] were on a GEICO roadside assistance run at the time of the collision."

The parties agree that an entity is **not generally vicariously liable** for the negligence of an independent contractor's employees. *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). However, a limited exception to this general principle exists at common law where an injury is caused by the failure of an independent contractor to exercise due care with respect to the performance of

-16-

**work that is intrinsically dangerous**.  *See Blue Grass Fair Ass'n v. Bunnell*, 267

S.W. 237, 239 (Ky. 1924).  Derived from ancient English common law, the

features of this exception are described in § 427 of the *Restatement (Second) of*

*Torts*, which provides as follows:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

This provision carves out an exception that renders an employer (*e.g.*,

Midnight Recovery) liable for the negligence of an independent contractor (*e.g.*,

Worley) where the contractor failed to guard against **a special danger** -- regardless

of whether the employer itself was negligent.  *See Restatement (Second) of Torts*,

introductory note at 394.  However, the exception applies **only** where "the harm

results from the negligence of the contractor **in failing to take precautions**

**against the danger involved in the work itself,** which the employer **should**

**contemplate** at the time of his contract."  *Id.* § 427 cmt. d. (emphases added).  It

**does not** apply "where the negligence of the contractor creates a new risk, not

inherent in the work itself or in the ordinary or prescribed way of doing it, and not

reasonably to be contemplated by the employer."  *Id.*

-17-

The exception has no application with respect to "negligence in the operative details of the work which involve no peculiar risk, which the employer may reasonably assume will be carried out with proper care." *Id.*

We applied this provision of the *Restatement* in *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 805 (Ky. App. 1994). In that case, we observed that "no liability can attach to the employer unless the injury was foreseeable as a *probable result* of the activity." *Id*. (emphasis added). Furthermore, we specifically rejected the contention that an activity which is **not ordinarily dangerous** can become inherently dangerous if performed under certain conditions. *Id.* We concluded that under this exception "the basic nature of the activity" cannot be transformed into one that is inherently dangerous. *Id.*

In *Louisville & Nashville Railroad Co. v. Smith's Administrator*, 119 S.W. 241 (1909), the court addressed the common law principles underlying the *Restatement* provision. The court identified a class of cases where the work to be done by an independent contractor is of such a hazardous nature that even though it is conducted in a reasonably prudent and careful manner, injury may reasonably be expected to follow. In those cases, the independent contractor's employer may be found liable to a third party. However, where the injury sustained is one which could have been anticipated and avoided with the exercise of ordinary care, the employer cannot be held liable.

-18-

Likewise, in *Pine Mountain Railroad Co. v. Finley,* 117 S.W. 413, 416 (Ky. 1909), the court observed as follows:

> where the character of the business undertaken is of such a hazardous nature that the very undertaking itself will, necessarily, work an injury to or impose a hardship upon third persons . . . [the employer] cannot escape liability on the ground that the work is done by an independent contractor.

The undisputed, stipulated negligence of Worley in this case -- crashing at speed into a vehicle stopped at a traffic light because of driver inattention -- did not involve a risk associated with the ordinary, foreseeable, or prescribed way of operating a tow truck. On the contrary, the negligence of Worley and Midnight Recovery created a new risk not inherent in or normal to the proper operation of any **vehicle**. As we observed in *Miles Farm Supply v. Ellis*, 878 S.W.2d at 805, an activity is not intrinsically dangerous if it "can be accomplished without probable injury **except in the event of negligence**[.]" (Emphasis added.)

It is manifestly true that a tow truck can be driven without probable injury. Furthermore, we have rejected the premise that outside influences can transform the basic nature of an activity into one that is *inherently* dangerous. *See Miles*, 878 S.W.2d at 805.

This analysis is not impacted by the provisions of KRS 189.670 upon which the trial court relied in support of its decision. KRS 189.670 provides as follows:

> It is hereby declared to be the public policy of this state that heavy motor trucks . . . increase the cost of highway construction and maintenance, interfere with and limit the use of highways for normal traffic thereon, and endanger the safety and lives of the traveling public, and that the regulations embodied in this chapter with respect to motor trucks, semitrailer trucks and semitrailers are necessary to achieve economy in highway costs, and to permit the highways to be used freely and safely by the traveling public.

By its terms, this provision is inapplicable. The statute identifies a public policy supporting the enactment of regulations to govern the use of heavy motor trucks on our highways. As used in the chapter, "motor truck" is defined as a motor vehicle "designed for carrying freight or merchandise." KRS 189.010(6). Freight is generally regarded as goods transported in bulk; merchandise, as goods bought and sold. Tow trucks are not designed to transport goods in bulk or merchandise to be bought or sold.

Moreover, tow trucks are specifically designed and operated (in the absence of negligence) to enhance public safety. They do not increase the cost of highway construction and maintenance in the same way that motor trucks or private vehicles do, nor do they interfere with or limit the use of highways by normal traffic. They are operated solely to keep roadways clear of disabled and

illegally parked vehicles.  Operated with ordinary care, tow trucks do not endanger the safety and lives of the traveling public.

Thus, the trial court erred in denying summary judgment to GEICO on its erroneous theory that GEICO was vicariously liable to Warner for the negligence of an independent contractor's (Midnight Recovery's) employee (Worley).  The court erred in its characterization of the operation of a tow truck *per se* as being inherently dangerous and thus creating an exception to the general rule against such liability.

We reverse the ruling of the trial court in denying GEICO's motion for summary judgment on this issue.  GEICO was -- and consequently is -- entitled to judgment.

As a result of our ruling on this issue, the remainder of GEICO's arguments are rendered either moot or irrelevant by our analysis on this point of error, including: the issue of whether Worley was on a GEICO run at the time of the collision; the denial of GEICO's motions *in limine*; and the denial of its *Daubert* motion with respect to Stidham, the accident reconstruction expert offered by Warner.  (Stidham's testimony will be discussed later in this Opinion.)

Also rendered moot by this ruling are Warner's arguments that the trial court erred in its instructions to the jury concerning agency and its decision denying punitive damages against GEICO.

-21-

## GEICO'S DIRECT LIABILITY: NEGLIGENT HIRING, TRAINING, AND SELECTION -- AND CR 54.02

In her cross-appeal, Warner argues that the trial court erred by granting summary judgment to GEICO, rejecting her claim that GEICO could be held directly liable for negligently selecting and retaining Midnight Recovery to provide towing services to its insureds. She contends that we may review this issue because the finality language of the trial court's summary judgment entered on July 12, 2023, did not conclusively render its order immediately appealable. In order to resolve this issue, we must consider whether our jurisdiction has been properly invoked.

In its order of June 1, 2023, the circuit court considered "whether the jury should be instructed on [Warner's] theories of negligent hiring and/or supervision of an independent contractor." The circuit court noted that this Court has held explicitly (albeit in unpublished opinions) that Kentucky does *not* recognize such a claim. However, the court expressed its ambivalence on the status of that issue. It concluded that the decision of the Supreme Court of Kentucky in *Lake Cumberland Regional Hosp., LLC v. Adams*, 536 S.W.3d 683 (Ky. 2017), *implicitly recognized* the validity of such a claim. The circuit court "urge[d] the Court of Appeals, [*sic*] or the Kentucky Supreme Court to weigh in and finally settle the question." The court then advised counsel that it would entertain a motion under the provisions of CR 54.02 to "dispatch" this case for an

immediate appeal, noting that "it appears to the Court that it is, indeed, the right case" to press for appellate review.

Following the court's invitation, GEICO filed a motion requesting that the trial court make its order of June 1, 2023, final and appealable pursuant to the provisions of CR 54.02. The trial court granted the motion.

In its order, the court clarified its decision that finally adjudicated Warner's claim for negligent hiring and/or supervision of an independent contractor, ruling that this issue could **not be** submitted to a jury. It reiterated that it "intended to render a final adjudication upon [Warner's] claim for negligent hiring and/or supervision of an independent contractor." The court explained that it "felt required to follow the unpublished opinions of the Court of Appeals which expressly reject such a theory under Kentucky law." It was persuaded by Warner's argument that if the court were wrong in its decision to grant summary judgment to GEICO with respect to this issue, "a retrial will be necessary following appellate review."

The court explained that in light of that possibility, its "final determination on [Warner's] claim for negligent hiring and/or supervision of an independent contractor should be subject to an immediate appeal, and there is no just reason for delay." Lastly, the court's order recited yet again: "[t]his is a final judgment on [Warner's] claim, and there is no just reason for delay."

At that point, Warner considered whether or not to file an appeal. She declined to do so and determined that it was in her best interest to forge ahead to trial. Counsel advised the trial court of her decision.

Following the verdict and entry of the court's judgment on June 25, 2024, Warner filed a motion to amend the order of July 12, 2023. She now asked the court to remove the finality endorsement included in the order granting summary judgment to GEICO so that she could file a timely appeal of the trial court's decision with respect to her claim for negligent hiring and/or supervision of an independent contractor. However, GEICO argued that the time to appeal had long since passed and that the court's final order from nearly a year ago could not now be amended so as to resurrect Warner's direct negligence claim.

Nonetheless, the trial court granted Warner's motion. It explained that it had erred in 2023 by deciding that this was its final judgment with respect to Warner's claim of negligent hiring and/or supervision of an independent contractor and by certifying to this Court that there was no just cause for delay. It declared that its decision to finally adjudicate Warner's claim and to certify the order was intended merely to "obtain the higher court's guidance on an unsettled issue of law." In effect, it was asking for what amounted to an advisory opinion.

The provisions of CR 54.02 authorize a trial court dealing with multiple claims or multiple parties in a single action to grant a final judgment as to

fewer than all of the claims or parties upon a determination that there is no just reason for delay. In this case, the trial court could have reasonably denied GEICO's motion to make the summary judgment final and appealable. Yet, the court chose to exercise its discretion, to weigh the practical needs of the case, and to determine, under the circumstances, that Warner was entitled to immediate appellate review of its decision to dismiss her claim. The court's order included the reasoning underlining its certification, reciting in unequivocal language that the judgment was final and appealable and that there was no just cause for delay. We note that both prongs of CR 54.02 were satisfied:

> under CR 54.02, an interlocutory order may only be made final and appealable if the order includes **both recitations** -- (1) that there is no just cause for delay, and (2) the decision is final. Strict compliance with the rule is required. *Peters v. Board of Education*, 378 S.W.3d 532, 540 (Ky App. 2017). A trial court's failure to conclude both recitations in a judgment renders it interlocutory and nonappealable.

*Vorherr v. Coldiron*, 525 S.W.3d 532, 540 (Ky. App. 2017) (emphasis added).

Based upon the court's certification, the parties were on notice that the otherwise interlocutory judgment had now been rendered immediately appealable. Warner elected not to file a notice of appeal, and her counsel explained that it was Warner's personal decision to pursue her only claim remaining now -- namely, the

-25-

vicarious liability claim that we have just discussed and affirmed in favor of GEICO.

To reiterate, Warner elected **not** to file a notice of appeal within thirty days of entry of the circuit court's final judgment -- or even a protective appeal. The timely filing of a notice of appeal is jurisdictional. *See Long v. Department of Revenue*, 718 S.W.3d 868, 880 (Ky. 2025). It is quite simply too late to appeal the judgment at this juncture because our jurisdiction is time-barred. *See Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722, 723–24 (Ky. 2008).

We must next address the trial court's post-trial attempt to retract its certification of the order as final and appealable. The court's original order of July 12, 2023, fully adjudicated Warner's claim on the merits. It could not avoid its previous legitimate exercise of its own discretion after the passage of the jurisdictional time limits by invoking the provisions of CR 60.02(f), which would permit a court to relieve a party from a final judgment or order for "any other reason of an **extraordinary nature** justifying relief." (Emphasis added.)

There was no reason of an extraordinary nature. The understandable desire or wisdom of changing trial strategy is patently demonstrable, but it does not constitute a "reason of an extraordinary nature justifying relief" as envisioned by CR 60.02(f).

-26-

Therefore, we are compelled to dismiss Warner's appeal with respect to GEICO's independent negligence for lack of our jurisdiction.

## DIRECTED VERDICT GRANTED TO MIDNIGHT RECOVERY: NEGLIGENT SUPERVISION, TRAINING, OR HIRING

Next, Warner argues that the trial court erred by granting Midnight Recovery's motion for directed verdict with respect to her claim based on the company's allegedly negligent supervision and training of Worley. She contends that the evidence at trial was sufficient to show that Midnight Recovery failed to train Worley properly on the basis that he indicated that he was unfamiliar with the truck's air brake system. She explains that other evidence indicated that Worley was essentially "overworked and unsupervised."

Kentucky recognizes claims of negligent training and supervision. *Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky. App. 2000). The claims are based on an employer's independent negligence. *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 (Ky. 2014). An employer who conducts business through his employee is subject to liability for injury to a third party caused by the employee's conduct where the injured party can show that the harm was caused by the employer's negligence in training or supervising the employee. *Id.* In order to prevail, the injured party must prove the traditional common-law elements of negligence: duty, breach, injury, and legal causation linking the defendant's breach to the plaintiff's injury. *Restatement (Second) of Agency* § 213 cmt. a.

A motion for directed verdict is properly granted only where "there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ." *Thomas v. University Medical Center, Inc.*, 620 S.W.3d 576, 590–91 (Ky. 2020) (quoting *Jewish Hosp. & St. Mary's Healthcare, Inc. v. House*, 563 S.W.3d 626, 632 (Ky. 2018). In considering a directed verdict motion, a trial court must draw all fair and reasonable inferences from the evidence in favor **of the party opposing** the motion. *Id.* However, upon our review of an order granting a directed verdict, we must do the opposite and ascribe to the evidence all reasonable inferences and deductions which support the claim of the **prevailing party**. *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992). Because the trial court heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge. We may reverse only where we determine that the trial court clearly erred. *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998) (citation omitted).

Warner contends that her evidence was sufficient to avoid a directed verdict. She points to evidence indicating: (1) that Midnight Recovery failed to keep maintenance logs for the tow truck; (2) that its tow trucks were taken out of service by federal inspectors more than twice as often as the national average; (3) that her expert's inspection of the tow truck revealed that the right-rear brake was

defective; (4) that Worley failed to inspect the truck before driving it; (5) that Worley explained to police that the truck's brakes had "locked up;" and (6) that skid marks at the scene showed that Worley tried to brake before crashing into Warner's vehicle.

Warner's expert, Joseph Stidham, testified at trial that he had been paid to undertake a traffic collision reconstruction. He explained to the jury that while no one inspected the tow truck's brakes on the day of the crash, he analyzed Worley's statement to police that his brakes had "locked up;" cell-phone photographs of tire marks taken at the scene following the crash; documents, including a report prepared by police following its inspection of the tow truck two and one-half months after the collision; Warner's vehicle; and his own inspection of the tow truck's four brakes (again, after it had been driven for another two and one-half months following the crash).

From this evidence, Stidham concluded that there was an issue with the tow truck's right, rear brake. Stidham never tested the tow truck's brakes. He explained to the jury that he observed many skid marks at the intersection. However, because he inspected the scene months after the crash, he could not be sure that any of the skid marks that he associated with Midnight Recovery's tow truck were actually connected to the collision that injured Warner. He also observed a substantial gap between the marks he viewed, explaining that "typically

we see skid marks going all the way to the vehicle. These now -- there's a gap" -- suggesting to Stidham that Worley's foot very likely came off the brake. Stidham estimated that Worley had slowed the tow truck from 65–70 miles per hour to 40–45 miles per hour before it collided with Warner's vehicle. He could not explain why Worley would have failed to maneuver into one of the three vacant traffic lanes in front of him to avoid colliding with Warner's vehicle. He did note that if Worley had negligently failed to apply the brakes until it was too late, "there's simply nothing any brakes can do to stop [the] accident."

Warner bore the burden of proving that Midnight Recovery's independent negligence caused her injuries. While circumstantial evidence can establish the causal connection between Midnight Recovery's acts or omissions and Warner's injuries, the evidence "must indicate the probable, as distinguished from a possible cause." *Gibson v. Fuel Transp., Inc.*, 410 S.W.3d 56, 61 (Ky. 2013) (citing *Briner v. General Motors Corp.*, 461 S.W.2d 99, 101 (Ky. 1970)).

The trial testimony established that Stidham offered the *possibility* that the tow truck's right rear brake was defective. He admitted that he had not tested the brake. Moreover, Stidham's inspection occurred months after the crash; the tow truck had remained in service in the interim. He conceded that brakes change with daily use -- especially in a commercial setting. He could not know the brake's condition at the time of the crash. Finally, because of the many skid marks

left at the intersection over the course of time, Stidham's deductions were of limited probative value concerning the cause of the crash.

As to Worley's statement immediately after the collision indicating that the brakes "locked up," Stidham explained that air brakes are differently responsive. Pressing hard on the air brakes may not have felt as Worley expected because the brake does not feel firmer and firmer when depressed like a brake in a car; but it "feels the same all the way through no matter how hard you're pressing on them," according to Stidham. Police investigators did not suggest that the skid marks they observed on the scene were consistent with locked brakes. But they never inspected the tow truck's brakes or conducted any investigation into their condition.

Last, with respect to the allegation that Worley was overworked, there was no evidence to suggest that Worley was fatigued at the time of the collision or that his physical condition played any part in causing the crash. Nor was there evidence to support Warner's allegation that Worley's lack of training caused the crash.

Nothing in Stidham's testimony contradicted the stipulation that the collision was caused by Worley's ordinary negligence. Having heard the live testimony, the circuit court concluded that Warner failed to introduce evidence that anything other than Worley's excessive speed and inattentiveness caused the crash.

-31-

In this case, having heard the evidence presented and having drawn all fair and reasonable inferences from the evidence in Warner's favor, the trial court concluded that Warner failed to show that the injuries she sustained were linked to any breach of Midnight Recovery's duty of care. Instead, the circuit court determined that there was no evidence to indicate that anything other than Worley's own inattentiveness and excessive speed caused the crash. On the same basis, the trial court concluded that Midnight Recovery was entitled to a directed verdict with respect to Warner's allegation that it failed to maintain the tow truck in good working order.

We cannot conclude that the trial court erred in its assessment of the evidence. Absent a causal connection between Warner's injuries and Midnight Recovery's allegedly negligent supervision, training, or negligent maintenance of the vehicle, Midnight Recovery was entitled to a directed verdict.

Therefore, we affirm the trial court's entry of a directed verdict on this issue.

## THE 911 DEFENDANTS AND THE "PUBLIC DUTY DOCTRINE"

In her last argument, Warner argues that the trial court erred by dismissing her claims against the 911 Defendants while discovery was pending. We agree.

In her complaint, Warner alleged that Williams and Wilder negligently failed to perform their ministerial duties to collect pertinent information and initiate an appropriate response once calls for emergency services were made. She alleged that Downes and Meiman failed to perform their ministerial duties to properly train and supervise Williams and Wilder. Finally, she alleged that the delay in dispatching an ambulance and other emergency care exacerbated her injuries.

As recited above, the 911 Defendants did not answer the complaint or respond to discovery requests. They filed a motion to dismiss and argued that Warner could not establish a *prima facie* case of negligence against them because they were shielded from liability by the "public duty doctrine." As an additional basis for their motion, the 911 Defendants contended that Warner could not show that their alleged negligence was a substantial factor in causing any of her injuries. Finally, the 911 Defendants argued that they were entitled to qualified official immunity from suit because they were engaged in discretionary acts in good faith and within the scope of their authority. Attached to their motion were call logs; a copy of the 911 recordings; and affidavits of both Downes and Meiman.

In response, Warner argued that the motion had been converted to one for summary judgment by the attachment of the exhibits and affidavits. Furthermore, she contended that the fact-intensive analysis necessary to determine

whether the 911 Defendants were entitled to qualified official immunity was impossible because the 911 Defendants had not yet responded to requests for discovery relevant to MetroSafe's policies and procedures, protocol, standard documentation requirements, and training and continuing education requirements.

In order to establish her claim for negligence, Warner was required to establish the familiar elements of: (1) a duty of care on the part of the 911 Defendants; (2) a breach of that duty; and (3) injury. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). The trial court applied the "public duty doctrine" and concluded that Warner could not show that the 911 operators owed her a duty of care on that basis alone. It dismissed the claims against the 911 Defendants. It did not consider whether they were entitled to assert qualified official immunity.

Generally, "a motion to dismiss is converted to a motion for summary judgment if matters outside the pleadings are presented to, and not excluded by, the circuit court." CR 12.02; *Schell v. Young*, 640 S.W.3d 24, 33 (Ky. App. 2021). While the trial court is free to consider matters outside the pleadings, doing so often converts the request for dismissal into a motion for summary judgment. CR 12.02; *McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 840 (Ky. 1960). The exhibits and affidavits attached to the 911 Defendants' motion to dismiss were considered by the trial court and were sufficient to convert the motion to one for

summary judgment. Consequently, our standard of review with respect to this issue is based on the appeal of a summary judgment: whether the trial court correctly concluded that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. CR 56.03; *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); *Middleton v. Sampey*, 522 S.W.3d 875, 878 (Ky. App. 2017). Again, we review the trial court's conclusions of law *de novo. Id.*

Whether a duty exists is a question of law. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). Whether the public duty doctrine applies and whether an exception to the doctrine is relevant are also issues decided as a matter of law. *Id.* (citing *McCuiston v. Butler*, 509 S.W.3d 76, 80 (Ky. App. 2017)). Similarly, whether a public employee's conduct was discretionary or ministerial for purposes of qualified immunity is a legal question subject to *de novo* review. *Id.* (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001); *Haney v. Monsky*, 311 S.W.3d 235, 241 (Ky. 2010)).

The public duty doctrine holds that a duty owed by a public official to the public at large is **not enforceable** in tort. In *McCuiston v. Butler*, 509 S.W.3d 76 (Ky. App. 2017), this Court discussed the policy rationales behind the doctrine, including the policy that "[p]ersons who serve the public must be allowed to carry out their function without fear of having to answer for harm caused to an

-35-

individual by events which are outside the control of the public official."
*McCuiston v. Butler*, 509 S.W.3d at 79 (quoting *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995)).

However, where an injured party can show the existence of a "special relationship" with the public official, the public duty doctrine does **not** shield the alleged tortfeasor from liability. *Id.* Notably, "[t]he 'special relationship' rule was developed in the context of injuries suffered by members of the general public disassociated with and far removed from negligent acts that allegedly caused their injuries." *Id.* at 82 (quoting *Gaither v. Justice & Public Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014)).

Our courts have applied the public duty doctrine on an *ad hoc* basis. A survey of our jurisprudence confirms that we have not yet formulated a precise body of case law addressing this issue. Even so, our case law reflects our concern and awareness of the interplay of the doctrine, the special relationship exception, and the discretionary/ministerial analysis of qualified immunity. A precise approach to the concepts remains as yet unsettled; *ergo*, our *ad hoc* application.

Application of the special relationship exception is especially dependent upon the specific facts of each matter. The trial court relied heavily upon our decision in *McCuiston*, particularly pertinent to the case before us because *McCuiston* involved the public duty doctrine in the context of a 911 call.

In that case, McCuiston had called 911 to report a theft. During the call, McCuiston slurred her words. Although she did not report a medical emergency nor did she request emergency services, the 911 operator dispatched a law enforcement officer to McCuiston's residence to investigate her condition. McCuiston explained to the 911 operator that she was dehydrated and would be unable to answer the door. She told the 911 operator that the responding officer should announce his presence and come on inside.

However, the 911 operator did not relay this information to police. When the responding officer arrived, he did not enter the residence. He investigated outside the home but was unable to make contact with McCuiston. He assumed that no one was home and left. About three days later, McCuiston was found dead in the house. A cell phone was found near her body, which showed that she had placed a call to the 911 operator. Her estate sued the 911 operator, alleging negligence. The trial court determined that the 911 operator was entitled to qualified official immunity and granted summary judgment.

On appeal, this Court held that the public duty doctrine applied to shield the 911 operator from liability. After analyzing the facts, we concluded that the estate could not show that a special relationship existed between the 911 operator and McCuiston so as to make her death uniquely foreseeable. Instead, the 911 operator merely answered the call; performed his regular duties; and sent

assistance in a non-emergency situation. *Id.* at 82. Consequently, we affirmed the summary judgment -- albeit on grounds separate and distinct from the trial court.

Relying upon our decision in *McCuiston*, the Jefferson Circuit Court concluded that Warner could not prove an exception to the public duty doctrine. It reasoned that Williams and Wilder "created no special relationship" with Warner because Warner herself did not actually make the 911 calls for assistance. Moreover, Warner's "injury was not uniquely foreseeable." Finally, the trial court concluded that where the 911 operators had no duty of care, Downes and Meiman could not be held liable for negligent training or supervision.

While we must accept the holding of the *McCuiston* court that the public duty doctrine applies to a 911 operator, there are significant differences between *McCuiston* and the case before us with respect to the application of the special relationship exception. In fact, these differences were highlighted by the federal district court in its decision to remand the matter to Jefferson Circuit Court.

For example, in *McCuiston*, the 911 operator claimed that he was not liable, in part, because he "acted in the prescribed manner for a 911 dispatcher and performed his responsibilities in the typical manner." *McCuiston*, 509 S.W.3d at 82. The 911 operators have made no such claim in this case. Furthermore, the public policies espoused by the court in *McCuiston* do not apply here where the alleged injury that Warner suffered occurred not because of "events which [were]

outside the control of" the 911 defendants, but those precisely *within* their control. *Id.* at 80 (quoting *Ezell*, 902 S.W.2d at 397). Likewise, Warner's injuries are not alleged to be "'disassociate[d] with and far removed from negligent acts that allegedly caused [her] injuries.'" *Id.* at 82 (quoting *Gaither*, 447 S.W.3d 628). Instead, Warner claims that it was precisely the negligent acts of the 911 Defendants that exacerbated her injuries.

Our jurisprudence indicates that a special relationship between the parties can be established where a governmental official exercises substantial control over the circumstances leading to foreseeable harm and the plaintiff has relied on the government's activities. *See Lane v. Kentucky Department of Corrections*, No. 2024-CA-0597-MR, 2025 WL 2678860 (Ky. App. Sep. 19, 2025). Under the circumstances, it is possible that discovery efforts could produce evidence to show the existence of regulations, policies, or protocols that establish a special relationship between a 911 operator directing emergency services to those in need and whose injuries would be foreseeably compounded if the operator failed to perform as expected. Furthermore, discovery could indicate that a duty to Warner existed not based upon a special relationship with the 911 operator, but upon a requirement that the operator and/or emergency service administrators perform their ministerial duties with due care.

The analysis required to address the issues raised in the 911 Defendants' motion is highly fact-dependent. For summary judgment to be properly granted, the party opposing the motion must have been given adequate opportunity to discover the relevant facts. *Suter v. Mazyck*, 226 S.W.3d 837, 842–43 (Ky. App. 2007). A proper opportunity for discovery did not occur in this case.

Because summary judgment was prematurely granted, we must vacate and remand for further proceedings with respect to that issue. The circuit court can determine whether there are any material issues of fact precluding summary judgment in this case only after Warner has been given an opportunity to engage in discovery.

## WORLEY'S CROSS-APPEAL

Next, we consider Worley's cross-appeal. First, he argues that the trial court erred by failing to dismiss him as a party to the action. We disagree.

In his brief, Worley explains that he was entitled to be dismissed from the litigation because he was not a necessary party. He observes that his status as an employee, working within the course and scope of his employment, was undisputed. He had admitted and stipulated his negligence. Therefore, Midnight Recovery was liable as a matter of law for his negligence. He argues that his dismissal would not have prevented Warner from recovering damages from Midnight Recovery.

-40-

The fact that Warner could have continued to pursue Midnight Recovery without Worley's participation is irrelevant to the analysis. Where an agent is acting within the course and scope of his employment, both the agent and the principal may be held jointly liable for the agent's negligence. *New Ellerslie Fishing Club v. Stewart*, 93 S.W. 598, 599 (Ky. 1906). There is no legal basis upon which to conclude that Midnight Recovery's stipulation that it was vicariously liable for Worley's negligence negated Worley's own negligence. Instead, Warner continued to have an active and viable claim against him, individually. Worley was not entitled to dismissal. There was no error.

## WORLEY'S MOTION FOR NEW TRIAL

Next, Worley contends that the trial court erred by failing to grant his motion for a new trial. He argues that the court's method of bifurcating the issues for the jury's consideration led to the admission of evidence that was so unduly prejudicial to him that it ultimately deprived him of a fair trial. On this point, we agree.

Again, Worley stipulated to the ordinary negligence claim against him, and Midnight Recovery stipulated to its vicarious liability. All of the following claims were to be submitted to the jury for its consideration at the same time: (1) Warner's claim against GEICO based on the use of the allegedly inherently dangerous tow truck; (2) the claim against Midnight Recovery based

-41-

upon its allegedly negligent training and/or supervision and maintenance of the tow truck; and (3) Warner's damages.

However, it is important to note that the claims against Midnight Recovery for its alleged negligent training and/or supervision of Worley and negligent maintenance of the tow truck were **dependent upon** and **derivative of** the claim against Worley. The Supreme Court of Kentucky has emphasized that where these separate claims are alleged in the same action, they should **not** be presented to a jury at the same time. *Lake Cumberland Regional Hospital, LLC v. Adams*, 536 S.W.3d at 697. Due to the likelihood that evidence admissible against one defendant might be unduly prejudicial to another, the separate claims should be tried in a bifurcated proceeding instead. *Id.*

While the trial court bifurcated the proceedings in this case, it did not do so in a meaningful manner. The trial's phase-one portion failed to take into account the possibility that evidence relevant to prove Warner's allegations against Midnight Recovery and GEICO would be unduly prejudicial to Worley.

Worley stipulated to his negligence. However, the negligent claims against Midnight Recovery involved proof that the employer failed to consider factors relevant to Worley's allegedly poor driving record (including a prior speeding ticket and license suspension) and his allegedly insufficient training. When Worley objected to the admission of evidence related to his driving record,

-42-

the trial court agreed that it was unfairly prejudicial to him. However, it determined that the evidence was certainly relevant and admissible against Midnight Recovery. In an effort to resolve the issue, the trial court admonished the jury as follows:

> You all are about to hear evidence and testimony from Mr. Worley regarding his prior traffic convictions. All right. The court has determined that this evidence is not to be used or relevant with regard to any claims that you're going to hear against Mr. Worley himself. All right. The court will later, at the time of deliberation, give you written jury instructions that are pertinent to this information and will let you know in those jury instructions how that evidence or information is to be used within your deliberations.

Ordinarily, admonitions or limiting instructions to the jury are deemed to be effective cures for the erroneous admission of evidence. *See Graves v. Commonwealth*, 17 S.W.3d 858, 865 (Ky. 2000). Admonitions and limiting instructions are usually sufficient because there is a presumption that the jury will heed such an instruction or admonition. *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005) (citations omitted).

However, given the overwhelmingly prejudicial effect of this evidence, coupled with the likelihood that its admission confused the jury, an admonition or limiting instruction was not sufficient to protect Worley's right to a fair trial. Moreover, the consequence of the error was even more pronounced when Midnight Recovery was granted a directed verdict before deliberations so that no

instruction limiting the use of the disputed evidence (as forecasted by the court) was forthcoming.

Worley also objected when Warner sought to introduce evidence that Midnight Recovery was required to pay an increased insurance premium to retain him in its employ as a driver. Again, the trial court agreed that the evidence was unduly prejudicial to Worley. Nevertheless, it concluded that the evidence was relevant to Warner's negligence claim against Midnight Recovery. Again, this evidence could only have resulted in undue prejudice to Worley and confused the jury. Under circumstances where the jury was never asked to consider Midnight Recovery's direct negligence, no admonition could have cured the problem.

Generally, "[t]he decision of a trial court to overrule a motion for new trial will not be disturbed on appeal absent a manifest error or abuse of discretion." *Embry v. Turner*, 185 S.W.3d 209, 213 (Ky. App. 2006) (citing *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 741 (Ky. 1996) (citation omitted)). Under the circumstances of this case, we must conclude that the court's error was manifest and that it substantially prejudiced Worley's right to a fair trial. The likelihood of real and unfair prejudice to him is sufficient to warrant a reversal of the judgment.

Therefore, we reverse the trial court's order denying Worley a new trial. In light of our resolution of these points of error, Worley's remaining contentions are moot.

# RECAPITULATION

We summarize our various holding as follows:

We affirm the trial court's decision to direct a verdict in favor of Midnight Recovery with respect to the direct negligence claims and affirm the trial court's decision to keep Worley as a party.

We reverse the trial court's order denying GEICO's motion for summary judgment with respect to the vicarious liability claims.

We reverse the trial court's order granting summary judgment to the 911 Defendants.

We reverse the trial court's order denying Worley a new trial.

We dismiss Warner's appeal with respect to the trial court's order granting GEICO's summary judgment on direct negligence claims, and upon remand, we direct that all claims against GEICO be dismissed.

We remand for a new trial related to damages based upon the stipulated liability of Worley and Midnight Recovery and the alleged liability of the 911 Defendants (assuming summary judgment is not entered following discovery).


ALL CONCUR.

BRIEFS FOR APPELLANT:

Melissa Norman Bork
Cara N. Alexiou
Louisville, Kentucky

Sandra D. Hauser
New York, New York

Charles H. Stopher
Bethany A. Breetz
Michael D. Risley
Louisville, Kentucky

*AMICI CURIAE* BRIEF FOR
THE AMERICAN PROPERTY
CASUALTY INSURANCE
ASSOCIATION, THE
NATIONAL ASSOCIATION
OF MUTUAL INSURANCE
COMPANIES, THE
AMERICAN TORT REFORM
ASSOCIATION, AND THE
INSURANCE INSTITUTE OF
KENTUCKY:

Philip D. Williamson
Dominic Bayer
Cincinnati, Ohio

BRIEF FOR APPELLEE/CROSS
APPELLANT CHRISTIAN WORLEY:

Jeri Barclay Poppe
Annie Bower Brown
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS
APPELLANT JILLIANNE WARNER:

Tyler S. Thompson
Liz J. Shepherd
Chad O. Propst
Louisville, Kentucky

Matthew White
Mark Gray
Louisville, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF FOR CROSS-APPELLEES RUTH
WILLIAMS, COURTNEY WILDER,
ANGELA DOWNES, AND EDWARD
MEIMAN:

Michael J. O'Connell
Jefferson County Attorney

Gregory Scott Gowen
Assistant Jefferson County Attorney
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE/CROSS-APPELLANT
CHRISTIAN WORLEY:

-46-

Jeri B. Poppe
Louisville, Kentucky


ORAL ARGUMENT FOR
MIDNIGHT RECOVERY:

Christopher M. Mussler
Louisville, Kentucky


ORAL ARGUMENT FOR 911 METRO
DEFENDANTS:

Gregory Scott Gowen
Louisville, Kentucky


ORAL ARGUMENT FOR GEICO:

Melissa Norman Bork
Louisville, Kentucky


ORAL ARGUMENT FOR
APPELLEE/CROSS-APPELLANT
JILIANNE WARNER:

Tyler S. Thompson
Louisville, Kentucky